# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 50167 | **DATE** | 8/16/2001 |
| **CASE TITLE** | Staebell vs. L'amour Hosiery, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendant's motion for summary judgment is granted in part and denied in part. The court also believes this case is now ripe for settlement and accordingly orders the parties to schedule a settlement conference with Magistrate Judge Mahoney within the next 30 days.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | AUG 16 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8-16-01 date mailed notice | |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# MEMORANDUM OPINION AND ORDER

(Reserved for use by the Court)

Plaintiff, Jim Staebell, originally filed his six-count complaint against defendant, L'amour Hosiery, Inc. (USA) (improperly named Lamour Hosiery, Inc. USA) ("L'amour"), in an Illinois state court. As Staebell is an Illinois citizen, L'amour is a Delaware corporation with its principal place of business in Montreal, Canada, and the amount in controversy exceeds $75,000, L'amour removed the case to this court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction, see id. § 1332. Venue is proper under 28 U.S.C. § 1391(a)(2). Before the court is L'amour's motion for summary judgment as to all six counts of Staebell's first-amended complaint, filed pursuant to Federal Rule of Civil Procedure 56.[1]

Staebell has brought three counts based on breach of contract for unpaid commissions as L'amour's sales representative accruing through the time of his termination (Count I), from the date of his termination until the time of trial (Count II), and after trial (Count III). He also alleges three corresponding claims under the Illinois Sales Representative Act, 820 ILL. COMP. STAT. 120/0.01 et seq. ("ISRA"), all of which include requests for statutory attorney's fees and treble damages (Counts IV - VI). Because L'amour paid Staebell in full for his pre-termination commissions shortly after he filed suit, Staebell concedes L'amour's motion should be granted as to all of Count I and part of Count IV (excluding his request for attorney's fees and treble damages). The court also agrees with L'amour that Counts III and VI should be dismissed because Staebell may not seek future damages. Illinois law[2] is clear that, in an action for the breach of an employment contract, a plaintiff may not recover for damages beyond the date of trial because they are too uncertain and speculative. See Mt. Hope Cemetery Ass'n v. Weidenman, 28 N.E. 834, 836-37 (Ill. 1891); Maier v. Lucent Tech., Inc., 120 F.3d 730, 735-36 (1997). Although a plaintiff wrongfully discharged during a fixed term employment contract may recover for damages between the time of termination and the end of the contract term, so long as the trial occurs after the term of his employment has expired, see Doherty v. Schipper & Block, 95 N.E. 74, 75 (Ill. 1911), such is not the case here.

This leaves Counts II and V (and what remains of Count IV). The letter agreement between L'amour and Staebell, written and signed by Martin Lieberman, L'amour's secretary, says that Staebell would receive a five percent commission on all net sales from L'amour's account with American Drug Store ("ADS"). It also provides that "This agreement expires on your [Staebell's] death or business incapacity." (Def. Exh. 6) The court finds this language sufficient to create a contract for a fixed or definite duration. Although employment contracts in Illinois are presumed to be at-will and terminable by either party, this rule is one of construction only and may be overcome by showing the parties agreed otherwise. See McInerney v. Charter Golf, Inc., 680 N.E.2d 1347, 1349 (Ill. 1997). In this case, the terms of the agreement are unambiguous and the intent of the parties is unmistakable as to the permanent nature of the contract: L'amour agreed to keep paying Staebell a five percent commission on all net sales from the ADS account until Staebell died or became incapacitated. Rather than allowing either party to terminate the contract at will, the agreement specifically says it was to last for Staebell's lifetime or until his business incapacity. Under L'amour's theory, however, it could have easily escaped its obligation to pay Staebell as soon as the ADS account was lined up by invoking at-will termination. Such an interpretation defies logic and would thwart the clear intent of the contract. Moreover, because this agreement is in writing, it does not pose the sort of problems usually associated with purported oral agreements for lifetime or permanent employment. See, e.g., Tolmie v. UPS, Inc., 930 F.2d 579, 580-81 (7th Cir. 1991).

In support of its position that the agreement is at-will, L'amour cites Jespersen v. Minnesota Mining & Mfg. Co., 700 N.E.2d 1014 (Ill. 1998), as well as another case cited in Jespersen, Trient Partners I Ltd. v. Blockbuster Entm't Corp., 83 F.3d 704 (5th Cir. 1996). The court finds L'amour's reliance on these cases misplaced. What the two contracts in these cases share is that they explicitly provided that they would continue indefinitely. See Jespersen, 700 N.E.2d at 1016; Trient, 83 F.3d at 709. Thus, the courts in these two cases held that an agreement which is *otherwise* indefinite in nature (and, hence, terminable at-will) cannot be converted into one of definite duration simply by listing various instances of material breach as grounds for termination. See Jespersen, 700 N.E.2d at 1016-17; Trient, 83 F.3d at 709. In stark contrast, L'amour's contract with Staebell is missing the first crucial step in this analysis: it contains no indefinite duration clause. Instead of being an agreement that is otherwise of indefinite duration, it is, as noted above, one for a specified term in the first instance. Similarly unconvincing are L'amour's remaining arguments, all of which depend in some way on the premise that the phrase "business incapacity" really means performing to L'amour's satisfaction and that Staebell failed to perform his duties as L'amour's agent, because they either rely on a tortured reading of the contract or raise numerous questions of fact the court cannot resolve on a motion for summary judgment.

L'amour's motion as to attorney's fees and treble damages under the ISRA is also not well-taken. At least with respect to Count IV, it is undisputed that L'amour withheld Staebell's pre-termination commissions for well over the statutory maximum of thirteen days after Staebell's termination, per the parties' custom and practice, and that is all that is required for attorney's fees under the ISRA. See 820 ILL. COMP. STAT. 120/2, 120/2; Maher & Assoc., Inc. v. Quality Cabinets, 640 N.E.2d 1000, 1009 (Ill. App. Ct. 1994). Staebell has also presented sufficient evidence for a reasonable jury to conclude that L'amour's conduct in withholding Staebell's commissions "exceeded bad faith," was "wilful and wanton," or amounted to a "vexatious refusal to pay," so as to justify treble damages. Maher, 640 N.E.2d at 1008; Zavell & Assoc., Inc. v. CCA Indus., Inc., 628 N.E.2d 1050, 1052 (Ill. App. Ct. 1993).

For the reasons stated above, L'amour's motion for summary judgment is granted in part and denied in part. Counts I, III, and VI are dismissed in their entirety and Count IV is dismissed in part (except for Staebell's request for attorney's fees and treble damages); Staebell may proceed on the remainder of Count IV, and Counts II and V.

---

[1] The court finds it necessary to admonish counsel on both sides for submitting briefs in violation of local rules regarding page limits. See N.D. Ill. R. 7.1. All three briefs submitted in support of or in response to L'amour's motion exceeded fifteen pages — in particular, Staebell's response brief was a whopping thirty-one pages long while L'amour's reply brief was twenty-four pages. Not only were such lengthy briefs uncalled for in this relatively straightforward case, but, what's worse, neither party requested prior court approval to exceed the page limit or included a table of contents or a table of cases. In the future, failure to comply with Local Rule 7.1 will result in the court simply striking the brief in its entirety.

[2] As the parties have assumed without discussion that Illinois law, rather than the law of some other state (or country), governs their dispute, the court will do the same. See Checkers Eight Ltd. P'ship v. Hawkins, 241 F.3d 558, 560 (7th Cir. 2001).